**IN THE UNITED STATES DISTRICT COURT**
                   **FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

KATHERINE GUEST O/B/O BETTIE  )
ANN HOPPER,                   )
                              )
                 Plaintiff,   )
                              )
          v.                  )         1:15CV00776
                              )
CAROLYN W. COLVIN,            )
Acting Commissioner of Social )
Security,                     )
                              )
                 Defendant.   )

               **MEMORANDUM OPINION AND RECOMMENDATION**
                **OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Katherine Guest, brought this action on behalf of her mother, Bettie Ann Hopper, pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Ms. Hopper's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.)[1] Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 12; see also Docket Entry 11 (Plaintiff's Brief), Docket Entry 13 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] For ease of party identification, this Recommendation will refer to Ms. Hopper as "Plaintiff."

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging an onset date of February 15, 2011. (Tr. 231-40.) Upon denial of those applications initially (Tr. 71-112, 161-65) and on reconsideration (Tr. 113-58, 173-82), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 184). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 32-70.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 11-26.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 2-7), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the disability insured status requirements of the [] Act through June 30, 2016.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since February 15, 2011, the alleged onset date.
>
> . . .
>
> 3. [Plaintiff] has the following severe impairments: a mood disorder; alcoholism with dependence on alcohol; a back disorder; and arthropathy of the right shoulder.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .

> 5. . . . [Plaintiff] has the residual functional capacity to perform light work . . ., except that she can reach in all directions, including overhead, with her right upper extremity no more than frequently but can do so with her left upper extremity without limitation. She can occasionally climb ramps, climb stairs and crawl; she can frequently stoop, kneel and crouch; and she can never climb ladders, ramps [sic] or scaffolds. She has environmental limitations, such that she must avoid exposure to extremes of cold, heat and humidity. She has work-related mental limitations that restrict her to the performance of simple, routine and repetitive tasks, consisting of no more than simple, short instructions with simple work-related decisions and few workplace changes.
>
> . . .
>
> 6. [Plaintiff] is capable of performing past relevant work as a housekeeper. This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.
>
> . . .
>
> 7. [Plaintiff] has not been under a disability, as defined in the [] Act, from February 15, 2011, through the date of this decision.

(Tr. 16-26 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

3

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is

4

disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment,

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

7

## B. Assignment of Error

In Plaintiff's sole issue on review, she asserts that the ALJ "improperly rejected the uncontradicted opinions of three Agency psychological experts (one examining and two nonexamining) when he found that Plaintiff had no social functioning deficits on her ability to perform work-related tasks."  (Docket Entry 11 at 3.)[6] In particular, Plaintiff faults the ALJ for rejecting the opinion of consultative examiner Dr. J. Craig Hunt that Plaintiff "may have difficulty interacting effectively with peers, coworkers, and supervisors due to complications from mood and possible cognitive deficits."  (Id. at 8 (quoting Tr. 476).)  Plaintiff further contends that "the ALJ's rejection of Dr. Hunt's opinion that Plaintiff has ongoing social limitations cannot be reconciled with the fact that [the ALJ] gave unqualified 'significant weight' to the . . . opinions of the Agency's nonexamining psychological

---

[6] The above-quoted language comes from Plaintiff's "Summary of Argument." (Docket Entry 11 at 3.)  That section of Plaintiff's Brief does not refer to any mental limitations beyond social functioning.  (See id.)  The actual "Argument" section similarly focuses on social functioning limitations.  (See id. at 7-13.) The introductory portion of the Argument does reference "concentration[,] persistence and pace" (id. at 4) and discusses medical and opinion evidence related to mental limitations in general (see id. at 4-7); however, at no point does Plaintiff therein develop any specific argument about errors committed by the ALJ (see id.).  Under these circumstances, the Court need not address matters other than concerning the ALJ's handling of social functioning-related limitations.  See generally Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 152 n.4 (4th Cir. 2012) ("This issue is waived because [the plaintiff] fails to develop this argument to any extent in its brief."); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Nickelson v. Astrue, No. 1:07CV783, 2009 WL 2243626, at *2 n.1 (M.D.N.C. July 27, 2009) (unpublished) ("[A]s [the plaintiff] failed to develop these arguments in his [b]rief, the court will not address them.").

8

consultants, who also identified significant social limitations." (Id. at 9 (citing Tr. 25, 87-88, 130-32).) According to Plaintiff, because the record establishes Plaintiff's social limitations, the ALJ's failure to include any social restrictions in the mental RFC also violates Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). (See Docket Entry 11 at 12-13.) Plaintiff's contentions do not warrant relief.

Consultative examiners such as Dr. Hunt do not constitute treating sources under the regulations, see 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and thus their opinions, as a general proposition, do not warrant controlling weight, Turberville v. Colvin, No. 1:11CV262, 2014 WL 1671582, at *6 (M.D.N.C. Apr. 23, 2014) (unpublished), recommendation adopted, slip op. (M.D.N.C. May 15, 2014) (Eagles, J.). However, the ALJ must nevertheless evaluate consultative opinions using the factors outlined in the regulations, and expressly indicate and explain the weight he or she affords to such opinions. See 20 C.F.R. §§ 404.1527(c), 416.927(c) ("Regardless of its source, [the ALJ] will evaluate every medical opinion [he or she] receive[s]" and where an opinion does not warrant controlling weight, [the ALJ must] consider all of the . . . factors [in 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6)] in deciding the weight [to] give to any medical opinion." (emphasis added)); Social Security Ruling 96-5p, Medical Source Opinions on Issues Reserved to the Commissioner, 1996 WL

374183, at *5 (July 2, 1996) ("SSR 96-5p") (noting that ALJs "must weigh medical source statements . . . [and] provid[e] appropriate explanations for accepting or rejecting such opinions" (emphasis added)); Social Security Ruling 96-8p, Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *7 (July 2, 1996) ("SSR 96-8p") ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." (emphasis added)); see also Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (holding that reviewing court generally "cannot determine if findings are supported by substantial evidence unless the [ALJ] explicitly indicates the weight given to all of the relevant evidence").

In this case, the ALJ discussed Dr. Hunt's evaluation in a fair degree of detail, and specifically mentioned Dr. Hunt's opinion that Plaintiff "demonstrated adequate interpersonal behavior but might have mood-related difficulties interacting with others, including co-workers and supervisors." (Tr. 22.) The ALJ then explained the weight he gave to Dr. Hunt's opinions as follows:

> The psychological opinion of Dr. Hunt is given partial weight, with his clinical findings on mental status examination given significant weight but his speculative opinions as to [Plaintiff's] work-related limitations and abilities given little weight, except to the extent he linked the limitation to her performance on mental status

10

> examination.  Thus, <u>his opinion that she demonstrated adequate interpersonal behavior is given significant weight, while his speculation that she may have difficulty getting along with peers or co-workers is entitled to less weight</u>.  His opinion that she is capable of conforming to social standards based on her history is similarly entitled to significant weight, as is his opinion that she demonstrated problems with concentration, persistence and pace in response to questions posed during the mental status examination.

(Tr. 24 (emphasis added); see also Tr. 476 ("[Plaintiff] demonstrated adequate interpersonal behavior yet *may* have difficulty interacting effectively with peers, coworkers, and supervisors due to complications from mood and possible cognitive deficits. . . . Based on her history, she appears capable of conforming to social standards and complying with rules and regulations, as well as, cooperating with authority figures." (emphasis added)).)

Plaintiff challenges the ALJ's above-quoted analysis in two respects.  First, she disputes the ALJ's "impli[cation]" that Dr. Hunt's opinions (emphasized above) contradict each other.  (Docket Entry 11 at 8.)  According to Plaintiff, Plaintiff's "ability to interact adequately during the examination was different than her ability to do so *in the context of full-time work*." (Id. (emphasis in original).)  However, the ALJ did not base his decision to discount Dr. Hunt's opinion regarding Plaintiff's social functioning on contradiction; rather, the ALJ expressly gave "less weight" to Dr. Hunt's social functioning opinion because the ALJ deemed the opinion speculative.  (See Tr. 24.)

11

Plaintiff also disagrees with the ALJ's characterization of Dr. Hunt's opinion as speculative, because "it ignores the fact that medical opinions about a claimant's ability to work are, in general, predictive (read: speculative) by nature." (Docket Entry 11 at 9.) This argument glosses over the fact that medical source opinions, although often "predictive," can vary greatly in their degree of equivocation. Here, Dr. Hunt qualified his opinion regarding Plaintiff's social functioning with the term "may." (Tr. 476.) Numerous courts have upheld the discounting of medical opinions that use equivocal terms such as "may." See Rogers v. Commissioner of Soc. Sec. Admin., 490 F. App'x 15, 17 (9th Cir. 2012) (concluding ALJ properly discounted as equivocal physician's opinion that the claimant "might be unable to deal with the usual stress encountered in the workplace" (emphasis added)); Mericle v. Commissioner of Soc. Sec., No. 2:14-CV-2785-CMK, 2016 WL 1073260, at *3 (E.D. Cal. Mar. 18, 2016) (unpublished) (holding ALJ properly noted equivocal language in assigning less weight to doctor's opinion that diagnostic testing scores "may be a slightly lower estimate of [the claimant's] ability" (emphasis added)); Bates v. Astrue, No. CIV.A. 8:09-3355-MBS, 2011 WL 1113778, at *8 (D.S.C. Jan. 21, 2011) (unpublished) (finding no error where ALJ gave little weight to doctor's "equivocal" conclusion that the claimant "may be developing some depression as a result of his condition"), report and recommendation rejected on other grounds, 2011 WL

12

1113474 (D.S.C. Mar. 24, 2011) (unpublished).[7] The ALJ did not err in his decision to discount Dr. Hunt's opinions.

Plaintiff next argues that the ALJ erred by according "significant weight" to the state agency psychological consultants' opinions but failing to include their social functioning restrictions in the mental RFC. (See Docket Entry 11 at 9-10 (citing Tr. 25, 87-88, 130-32).) More specifically, the state agency psychological consultants both concluded that Plaintiff remained able to perform work with decreased social interaction. (See Tr. 81 ("[Plaintiff] retains the capacity to perform simple routine and repetitive tasks (SRRTs) at a non-production pace in a position with reduced social demands."); see also Tr. 132 ("[Plaintiff] . . . can accept direction from a supervisor and maintain adequate relationships with co-workers in a work setting with minimal social interaction requirements and only casual public contact.") Plaintiff correctly points out that the ALJ's mental RFC did not contain any social restrictions. (See Docket Entry 11 at 9-10; see also Tr. 19.)

---

[7] Plaintiff asserts that "the ALJ gave 'significant weight' to several other opinions of record rendered by Agency physicians, Tr. 24-25, opinions which by the ALJ's definition are no less speculative." (Docket Entry 11 at 9 n.3.) Plaintiff, however, does not identify the specific basis for that assertion. (See id.) Moreover, a review of the record reflects that the state agency consultants' opinions which the ALJ adopted (see Tr. 24-25) did not contain equivocal terms. (See, e.g., Tr. 81 ("[Plaintiff] retains the capacity to perform simple routine and repetitive tasks (SRRTs)"), 85 ("Does [Plaintiff] have exertional limitations? Yes[.] Rate [Plaintiff's] exertional limitations: Occasionally . . . lift and/or carry (including upward pulling): 50 pounds").)

13

However, the ALJ's failure to incorporate the state agency consultants' social restrictions (or to explain why he chose not to do so) constitutes harmless error under the circumstances presented here. Both state agency consultants determined that, despite that social restriction, Plaintiff remained able to perform her past relevant work as a housekeeper (see Tr. 91, 134), a determination the ALJ also adopted (see Tr. 25).[8] Thus, even had the ALJ included the state agency psychological consultants' social restrictions in the mental RFC, the ALJ still would have found that Plaintiff remained able to perform her past relevant work as a housekeeper. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

Lastly, Plaintiff contends that, "[a]s *Mascio* is rooted in unambiguous Agency policy and long-standing Fourth Circuit precedent requiring that the RFC/concomitant hypothetical must accurately describe all of [Plaintiff's] limitations as described in the record, its holding applies no less to unaccounted for

---

[8] The state agency consultants' and ALJ's conclusion that Plaintiff remained able to perform her past relevant work as a housekeeper, notwithstanding her deficit in social functioning, harmonizes with the Dictionary of Occupational Titles, which rates social interaction as "not significant" for the position of housekeeper. Dictionary of Occupational Titles, No. 323.687-014, 1991 WL 672783 (G.P.O. 4th ed. rev. 1991). That characteristic of Plaintiff's past relevant work also renders harmless any error in the ALJ's rejection of Dr. Hunt's opinion that Plaintiff "may" experience difficulties in social interaction.

14

social limitations than it does to an RFC which excludes concentration, persistence and pace deficits demonstrated by the record." (Docket Entry 11 at 13.) As an initial matter, doubt exists as to whether <u>Mascio</u>'s holding with regards to concentration, persistence, or pace ("CPP") should apply to the facts of the instant case. The <u>Mascio</u> court held that the ALJ's limitation in the RFC to unskilled work did not sufficiently account for a <u>moderate</u> limitation in <u>CPP</u> the ALJ had found at steps two and three of the SEP. See <u>Mascio</u>, 780 F.3d at 638. In that regard, the <u>Mascio</u> court expressly held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." <u>Id.</u> Here, in contrast, Plaintiff seeks to extend that holding in <u>Mascio</u> to a step two/three finding involving a <u>mild</u> limitation in <u>social functioning</u>, but without developing any rationale for such an extension. (<u>See</u> Docket Entry 11 at 13.) That failure warrants denial of relief, particularly given that the Fourth Circuit made clear its CPP-based holding rested on the distinction between the ability to perform simple tasks and the ability to stay on task, <u>see</u> <u>Mascio</u>, 780 F.3d at 632, and such a distinction does not clearly apply in the social functioning context.[9]

---

[9] Although Plaintiff asserts that "[c]ourts in this district [sic] have routinely enforced *Mascio* by remanding for further proceedings where the ALJ's decision did not account for mental impairments demonstrated by the record," and string-cites
(continued...)

15

Moreover, as discussed above, even had the ALJ included in the mental RFC the state agency psychological consultants' opinions that Plaintiff required a job with decreased social interaction (see Tr. 81, 132), the ALJ still would have concluded that Plaintiff remained capable of performing her past relevant work as a housekeeper. Further, Plaintiff neither proffers any other social restrictions the ALJ should have included in the mental RFC, nor argues that such restrictions render her past relevant work as a housekeeper inappropriate. (See Docket Entry 11 at 12-13.) Under such circumstances, Plaintiff has not demonstrated reversible error with respect to the ALJ's mental RFC determination.

---

[9] (...continued)
14 decisions issued by district courts within the Fourth Circuit (see Docket Entry 11 at 13 n.4), those cases addressed neither a "mild" limitation at steps two/three nor a limitation in social functioning, see Culver v. Commissioner, Soc. Sec. Admin., Civ. No. SAG-14-432, 2015 WL 4485268, at *3 (D. Md. July 21, 2015) (unpublished) (remanding based on unaccounted for moderate limitation in CPP); Hagedorn v. Colvin, No. 2:12CV85-RLV, 2015 WL 4410288, at *3-4 (W.D.N.C. July 20, 2015) (unpublished) (same); Taylor v. Colvin, No. 7:14CV00616, 2015 WL 4400534, at *4-5 (W.D. Va. July 17, 2015) (unpublished) (same); Wade v. Colvin, No. 7:14CV00569, 2015 WL 4404849, at *4-5 (W.D. Va. July 17, 2015) (unpublished) (same); Hemp v. Commissioner, Civ. No. SAG-14-2855, 2015 WL 4111483, at *2-3 (D. Md. July 7, 2015) (unpublished) (same); Winkler v. Commissioner, Civ. No. SAG-14-2720, 2015 WL 4069334, at *2-3 (D. Md. July 2, 2015) (unpublished) (same); Franklin v. Colvin, No. 5:14cv84, 2015 WL 4508635, at *3-4 (W.D.N.C. June 24, 2015) (unpublished) (same), recommendation vacated, 2015 WL 5457922 (W.D.N.C. Sept. 16, 2015) (unpublished), second recommendation rejected, 2016 WL 1724359 (W.D.N.C. Apr. 29, 2016) (unpublished); Malpass v. Colvin, No. 7:14-CV-164-BO, 2015 WL 3409193, at *2 (E.D.N.C. May 27, 2015) (unpublished) (same); Bailey v. Colvin, No. 5:14-CV-0248, 2015 WL 2449044, at *12-13 (D.S.C. May 21, 2015) (unpublished) (same); Talmo v. Commissioner, Civ. No. ELH-14-2214, 2015 WL 2395108, at *2-3 (D. Md. May 19, 2015) (unpublished) (same), recommendation adopted, slip op. (D. Md. June 5, 2015); Scruggs v. Colvin, No. 3:14-cv-00466, 2015 WL 2250890, at *6 (W.D.N.C. May 13, 2015) (unpublished) (same); Bradford v. Commissioner, Civ. No. WMN-14-2016, 2015 WL 1919643, at *2-3 (D. Md. Apr. 27, 2015) (unpublished) (same), recommendation adopted, slip op. (D. Md. May 19, 2015); Hill v. Commissioner, Civ. No. GLR-14-2872, 2015 WL 1893308, at *2-3 (D. Md. Apr. 24, 2015) (unpublished) (same), recommendation adopted, slip op. (D. Md. June 2, 2015); Salmon v. Colvin, 1:12CV1209, 2015 WL 1526020, at *2-3 (M.D.N.C. Apr. 2, 2015) (unpublished) (Biggs, J.) (same).

### III. CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment Reversing or Modifying the Decision of the Commissioner (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be granted, and that judgment be entered for Defendant.

                              /s/ L. Patrick Auld
                           **L. Patrick Auld**
                 **United States Magistrate Judge**

July 26, 2016